**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| QUANG KHAC TRAN | ) | |
| ID # 1369031, | ) | |
| Petitioner, | ) | |
| vs. | ) | **No. 3:12-CV-0406-N-BH** |
| | ) | |
| RICK THALER,  Director, | ) | **Referred to U.S. Magistrate Judge** |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Quang Khac Tran (Petitioner) challenges his conviction for murder in cause F04-00085-KQ. The respondent is Rick Thaler, Director of TDCJ-CID (Respondent).

### A.  Factual and Procedural History

The State indicted Petitioner for the murder of George Myers Boone on or about October 10, 2003.  (R. 2:9-10).  He pleaded not guilty and was tried before a jury in Dallas County on April 24-28, 2006.  (Clerk's Record ("C.R."):2-3).  The state appellate court recounted the evidence at trial as follows:

> Officer Kyle Robert Land, a Dallas police officer, responded to a 911 call in the Lower Greenville area.  When he and his partner arrived at the location, they found paramedics loading George Myers Boone into an ambulance.  A short time later, Boone died in the emergency room from a single gun shot wound to the chest.
>
> Ronald Bush, the store manager at the Home Depot where appellant worked, testified that about two months before Boone was

killed, appellant asked to borrow Bush's car.  When Bush asked why, appellant told him "I think my wife is messing around.  I'm gonna follow her today and she won't recognize me in your car."  Bush gave appellant the day off and allowed him to take the car.  Bush noticed that although appellant usually wore khakis and a dress shirt, that day he had on jeans, a t-shirt and a ball cap and that he seemed "a little panicked."  About two hours later, appellant called Bush and told him that he followed his wife to an apartment on Lower Greenville, walked into the unlocked apartment, and "caught them." That same day, he asked Bush for time off to move his wife out of the apartment.  A few weeks later, he asked for time off to help his wife move back into the apartment.

Michael Regitz testified he lived in a duplex across the street from Boone's apartment.  About one and one-half hours before Boone was killed, Regitz was outside on his porch.  He noticed a non-Caucasian man about 5'10" tall, wearing a ball cap.  The man was moving across the yard toward Boone's apartment building. Regitz noticed the man because he was not taking "a direct route diagonally across the yard...[i]t was more of a couple steps and maybe looking in a window, looking at the door."  The man "seemed to be hesitant, taking time, perhaps surveying the area."

Helena Cerquiera-Rodrigues, Boone's neighbor, testified that on the evening Boone was shot, she was leaving her apartment to go for a walk.  As she approached the door to Boone's apartment, she heard Boone say, "'No,' very loud" and "very startled."  She also heard a "feminine voice, angry, talking with" Boone.  The voice she heard was "a high-pitched voice," not a "strong man's voice." Cerquiera-Rodriques was concerned and stopped to decide what to do.  As she did so, she heard a gunshot.  She then returned to her apartment and called the police.

Sergeant Miguel Sarmiento testified he was the detective assigned to the case.  As part of his investigation, Sarmiento spoke with Boone's co-workers.  After doing so, he learned Boone and Vanessa Tran, appellant's wife, were having an affair which began months before Boone was murdered.  After learning of the affair, Sarmiento interviewed Tran.  According to Sarmiento, Tran denied any involvement with Boone's murder but admitted that she and appellant owned a gun.  When Sarmiento asked Tran if she would voluntarily submit the gun for testing, she called appellant. Appellant refused to submit the gun without a warrant.  The next morning, after obtaining a warrant, Sarmiento retrieved the gun from the Trans's

apartment. When he did so, appellant told Sarmiento appellant "watched a lot of CSI so [he] need[ed] to know what's gonna happen." Sarmiento then obtained the Trans's telephone records. According to Sarmiento, the telephone records suggested that around the time of the murder, Tran was at the Trans's apartment in Fort Worth and appellant was in Dallas. Specifically, the telephone records showed appellant's cellular telephone was being used in Dallas at the time of the murder, although appellant had told Tran he was at work in Keller at the time of the murder. After reviewing the telephone records, Sarmiento turned the focus of his investigation away from Tran and towards appellant. Sarmiento returned to the Trans's apartment and recovered several items for forensic testing, including a floor mat from appellant's car. The floor mat had a stain that tested presumptively positive for blood. Although the blood sample was degraded, the forensic examiner was able to exclude appellant and Tran as sources of the blood, but concluded the blood could have belonged to Boone because it contained a genetic marker which matched Boone's DNA profile.

Leah Chitty, Tran's friend, testified she and Tran were talking on the telephone around the time of the murder. According to Chitty, she knew Tran was at her apartment in Fort Worth at the time, because Chitty's caller identification on her cellular telephone showed Tran called from her home number and Chitty heard Tran's dogs barking in the background as they talked.

Detective Bruce Adams testified he was responsible for "processing" the scene where Boone was murdered. Among other evidence, he recovered a cartridge casing in the doorway of Boone's apartment. Heather Thomas, a firearm and tool-mark examiner, testified that she examined the Trans's gun and the cartridge casing found at Boone's apartment. She determined that the cartridge case was fired from the Trans's gun. Thomas also testified that after the cartridge case had been expelled from the gun, someone had intentionally damaged the interior of the gun.

After hearing this and other evidence, the jury found appellant guilty of murder.

*Tran v. State*, 2008 WL 434674, No. 05-06-00800-CR, slip op. at *1-2 (Tex. App.–Dallas, Feb. 19, 2008, pet. ref'd). The jury found petitioner guilty of murder and sentenced him to thirty years. (C.R.:3; R. 6:58).

3

On direct appeal, Petitioner alleged that the evidence was legally and factually insufficient to support his conviction, that the trial court erred by admitting certain autopsy photographs into evidence, and that the trial court erred by denying his motion for continuance. *Tran*, slip op. at *1. Petitioner's convictions were affirmed on direct appeal, and his petition for discretionary review (PDR) was refused on June 11, 2008. *See* PD-0355-08. Petitioner filed his state habeas application on April 6, 2009 (State Habeas Transcript "S.H.Tr." at 2). He contended that: (1) the State introduced testimony regarding his refusal to agree to a warrantless seizure by the police, his post-arrest silence, and his invocation of his right to counsel; (2) the State knowingly elicited false evidence; (3) he was denied the effective assistance of counsel at trial and on appeal; (4) the state's investigative procedures violated his constitutional rights; (5) the State had no evidence that he was in Dallas at the time of the murder; (6) the cumulative errors at trial violated his constitutional rights; and (7) he is actually innocent. (S.H.Tr.:7-16). The Court of Criminal Appeals denied the state writ without a written order on December 28, 2011. *Id*. at cover.

**B.      Substantive Claims**

On February 6, 2012, Petitioner mailed his petition for federal habeas relief raising the following grounds for relief:

    (1)  his conviction was obtained by the use of his invocation of:

        -his right to refuse a warrantless seizure (ground one);

        -his post-arrest right to remain silent (ground two);

        -his post-arrest right to counsel (ground three);

    (2)  the prosecution committed misconduct by knowingly using false evidence (ground four);

    (3) trial counsel provided ineffective assistance of counsel by:

-failing to object to the use of Petitioner's invocation of his rights to refuse a warrantless seizure, to remain silent, and to have the assistance of counsel (ground five);

-improperly eliciting testimony about Petitioner's invocation of his constitutional rights (ground eight);

-failing to investigate, develop, present, and object to false and inadmissible cell phone records (ground six);

-failing to interview, develop, and impeach the only witness to the crime (ground seven);

(4) appellate counsel provided ineffective assistance of counsel by:

-failing to argue on appeal that Petitioner's constitutional rights were violated when the trial court overruled defense counsel's objection to the use of evidence of Petitioner's invocation of his right to refuse a warrantless seizure (ground nine);

-failing to argue on appeal that false evidence was presented at trial (ground ten);

(5) his due process rights were violated when the police failed to conduct a proper investigation of the crime scene (ground eleven);

(6) he was convicted with no evidence that he was near the crime scene (ground twelve);

(7) his conviction was obtained through the use of cumulative constitutional errors (ground thirteen); and

(8) his due process rights have been violated because he is innocent (ground fourteen).

(Pet. at 7-8, 10-13).  Respondent filed a response on June 7, 2012, and provided the state court records.  Petitioner filed a reply brief on August 9, 2012.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532

U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.  INVOCATION OF CONSTITUTIONAL RIGHTS

In his first three grounds for relief, Petitioner claims that his constitutional rights were violated because his conviction was obtained based on testimony that he refused to consent to a warrantless seizure of his gun and that he asserted his post-arrest rights to remain silent and to counsel.

## A.  <u>Refusal to Consent to Warrantless Seizure</u>

Petitioner asserts in his first ground for relief that the testimony of the investigating police officer was used to infer his guilt. (Pet. at 7, Reply at 4-6). The officer testified he asked Petitioner to turn in his gun voluntarily, that Petitioner asked whether he was required to do so, that the officer told him that he did not have to do so voluntarily and that the officer would then have to obtain a warrant, and that Petitioner stated that he would require a warrant before turning over the gun. (R.

3:79-81, 85-6).  Counsel's objection to this testimony was overruled.  (R. 3:89-91).  Respondent argues that this ground for relief is barred by *Teague v. Lane,* 489 U.S. 288 (1989), that this evidence was used to demonstrate that Petitioner had the opportunity and motive to tamper with the gun, and that any potential error is harmless.  (Resp. at 10-13).

In *Teague*, the Supreme Court held that a new constitutional rule of criminal procedure is generally inapplicable to convictions that became final before the new rule was announced.  *Id*. at 299-316.  Petitioner's conviction became final in 2008.  The Fifth Circuit has not directly addressed the question of whether it is constitutional error to present evidence of a criminal defendant's refusal to consent to a warrantless search or seizure to support an inference of guilt, and this issue has not been addressed by the Supreme Court.  *See United States v. Runyan*, 290 F.3d 223, 249 (5th Cir. 2002).  Nevertheless, any such new rule could not be applied retroactively to Petitioner's case on collateral review unless it falls into a narrow category of either placing certain conduct beyond the power of the State to proscribe, or being a watershed rule of criminal procedure that implicates the fundamental fairness and accuracy of the criminal proceeding.  *Teague*, 489 U.S. at 311; *see also Beard v. Banks*, 542 U.S. 406, 417 (2004).  Petitioner has not argued, or shown, that such a new rule would fall into the narrow category of rules that can be applied retroactively to final convictions.

Even if this claim is not barred by *Teague*, a petitioner is entitled to federal habeas relief based on constitutional trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contrib-uted to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to

8

the harmlessness," under the *Brecht* standard, of the error, then we must conclude
that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017,

1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, a petitioner must

show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Here, there was considerable evidence supporting Petitioner's guilt, including evidence that

his gun was used to commit the murder, that his wife was at home in Fort Worth at the time of the

murder in Dallas, and that the gun was still in his possession after the murder and had been

intentionally damaged.  Defense counsel cross-examined the officer in depth about a person's

constitutional right to require the police to obtain a warrant before seizing property, the fact that

Petitioner did not try to dispose of the weapon and instead provided it to the police the following

day, and the possibility that he may have been protecting his wife.  (R. 3:120-30).  Petitioner has not

shown that the officer's testimony about his refusal to consent to a warrantless seizure of his gun

had a substantial effect or influence in determining the verdict.  The state court's denial of this

ground is therefore not contrary to federal law, and Petitioner's first ground for relief should be

denied.

**B.**      **Right to Remain Silent and Right to Counsel**

Petitioner asserts in his second and third grounds for relief that the officer's testimony about

Petitioner's failure to speak to him, and about the possibility that suspects will decline to speak to

the police without an attorney, were impermissible comments on Petitioner's invocation of his rights

to remain silent and to counsel.

The officer testified that he had a telephone conversation with Petitioner during which he

declined to turn over his gun to the police.  Petitioner declined his request to come for an interview,

9

and he never had another conversation with Petitioner.  He had hoped to speak to Petitioner during his investigation of the case, although sometimes people will invoke the privilege to have an attorney present.  The officer also testified that Vanessa Tran spoke to him two different times before her arrest without asking for an attorney, even after being advised that she could decline to speak with the police.  (R. 3:117, 155-56).  The officer presented the case to the grand jury in January of 2004, and it indicted Petitioner at that time. (R. 5:19-20).

Petitioner has not shown that any evidence of his invocation of his right to counsel was presented at trial.  The officer only stated generally that suspects may invoke that right.[1]  Petitioner has also not established any constitutional error with regard to the testimony about his refusal to speak to the investigating officer.  The Supreme Court has held that it violates a criminal defendant's due process rights for the prosecutor to reference his silence *after* arrest and *Miranda* warnings for impeachment purposes.  *Doyle v. Ohio*, 426 U.S. 610, 619 (1976).  Reference to silence *prior* to his arrest and prior to receiving *Miranda* warnings does not violate a defendant's constitutional rights, however, because there has been no assurance to the defendant that his silence will not be used against him.  *Brecht*, 507 U.S. at 628-29.

Here, it is clear from the context of the officer's testimony that he was referring to the period of time during which he was investigating the case, before Petitioner was indicted and arrested.  It was not improper for the prosecution to elicit this testimony because it was probative evidence of

---

[1]  Petitioner's Sixth Amendment right to counsel attached when he was indicted.  *United States v. Gouveia*, 467 U.S. 180, 188-89 (1984); *Kirby v. Illinois*, 406 U.S. 682 (1972).  Once this right to counsel has attached and been asserted, no representative of the State may initiate contact with a criminal defendant without his attorney's permission.  *Michigan v. Jackson*, 475 U.S. 625, 636 (1986).  If Petitioner had been formally questioned by the police prior to his indictment and invoked his Fifth Amendment right to deal with the police only through counsel, no further statement taken from him would have been admissible until counsel had been made available to him, unless he himself had initiated further communication.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  The record reflects that the officer did not comment on Petitioner's invocation of either his Fifth or Sixth Amendment right to counsel.

Petitioner's failure to offer his account of events.  *Id*. at 628-29.  Petitioner has failed to establish that his constitutional rights were violated.  The state court's denial of these grounds is not contrary to federal law, and Petitioner's second and third grounds for relief should be denied.

## IV.  PROSECUTORIAL MISCONDUCT

In his fourth ground, Petitioner asserts that the prosecution committed misconduct at trial by knowingly presenting false testimony about cell phone records that were not admitted into trial.

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a Petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material.  *Napue v. Illinois*, 360 U.S. at 271.  Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury.  *Napue*, 360 U.S. at 271.

Here, the trial court sustained counsel's objection to the admission of cell phone records that reflected which cell phone towers handled Petitioner's cell phone calls on the evening of the murder. The objection was sustained was because the records were not properly certified as business records admissible under a hearsay exception to the Texas Rules of Evidence.  (R. 4:170, 182-87). Petitioner asserts that these cell phone records were not admitted at trial, and any testimony from the officer and the cell phone company representative about them before they were excluded was

11

false.[2]   The record reflects that these records were excluded based on an evidentiary rule, not because they were false.  Petitioner has failed to show either that the evidence was false or that the prosecution knew that it was false.  He has therefore failed to establish that the prosecution either presented, or attempted to present, false evidence at trial.  The state court's denial of this ground is not contrary to federal law, and Petitioner's fourth ground for relief should be denied.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective by: (1) failing to object to the use of Petitioner's invocation of his rights to refuse a warrantless seizure, to remain silent, and to have the assistance of counsel; (2) improperly eliciting testimony about Petitioner's invocation of his constitutional rights; (3) failing to investigate and object to false and inadmissible cell phone records; and (4) failing to interview and impeach the only witness to the crime. (Pet. at 10-11).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."   U.S. Const. art. VI.   The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.   *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).   To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.   *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.   *See* 466 U.S. at 696.   The Court may address

---

[2]   The officer testified that the focus of his investigation changed from Vanessa Tran to Petitioner after he received and reviewed cell phone records reflecting that Petitioner was in Dallas at the time of the murder. (R. 3:116).

the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.    Failure to Object

In his fifth ground for relief, Petitioner asserts that trial counsel was ineffective because he failed to object on the proper ground to the investigating officer's testimony about his refusal to agree to the warrantless seizure of his gun, and he failed to object at all to testimony about his post-trial invocation of his right to remain silent and his right to an attorney. In his eighth ground, Petitioner claims that counsel was ineffective for eliciting testimony from the officer about his refusal to agree to a warrantless seizure and to speak to the officer.

Counsel did object to the officer's testimony about Petitioner's refusal to agree to the warrantless seizure of his gun. This objection was overruled. (R. 3:89-91). Petitioner asserts that counsel was ineffective for failing to object on Fourth Amendment grounds. (Reply at 14). He

13

asserts, erroneously, that the Texas Court of Criminal Appeals has held that it is error to admit evidence at trial regarding a defendant's refusal to consent to a warrantless search as evidence of guilt. (Reply at 4); *see also Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) (holding that it is error to admit evidence that a defendant invoked his right to counsel as proof of guilt, not evidence that he refused a warrantless seizure). Some state appellate courts, but not the Dallas appellate court that ruled on Petitioner's case on direct appeal, have either held or assumed without deciding that it violates a defendant's Fourth Amendment rights to admit evidence that he refused to consent to a warrantless search or seizure. *See Canales v. State*, 2001 WL 1251704 (Tex. App.-Amarillo Oct. 19, 2001); *Winn v. State*, 871 S.W.2d 756, 763 (Tex. App.–Corpus Christi, 1993); *Powell v. State,* 660 S.W.2d 842, 845 (Tex. App.–El Paso 1983, no pet.). Given the lack of any clear indication that the Dallas appellate court would have determined that this was error, and the fact that any error would have been subject to a harmless error analysis by the appellate court, *see Canales*, slip op. at 2, Petitioner has not shown a reasonable probability that his murder conviction would have been overturned but for counsel's failure to make this objection at trial.

With regard to his post-arrest rights to remain silent and to have an attorney present, the officer never testified about any invocation by Petitioner of these rights. Counsel was therefore not ineffective for failing to make these objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

In a related claim, Petitioner also asserts that his attorney was ineffective for eliciting testimony from the investigating officer about Petitioner's refusal to consent to the seizure of his gun and his failure to meet or speak with the officer before he was indicted. If counsel has made an

adequate investigation, any conscious and informed decision made based on trial tactics and strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753(5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). It is clear from the trial record that counsel questioned the officer about these issues in an effort to minimize the harm to Petitioner's case. This trial tactic did not permeate Petitioner's trial with obvious unfairness.

**B.    <u>Failure to Investigate</u>**

In his sixth and seventh grounds for relief, Petitioner contends that his trial counsel was ineffective for failing to properly investigate the cell phone records and to interview the witness who testified that she heard a woman's voice arguing with the victim immediately prior to the shooting.

Petitioner does not show what more counsel could have been accomplished if he had investigated the cell phone records. As discussed, the records were excluded because they were not properly certified as business records, not because of falsity. Counsel objected to the admission of the records when it became clear that the Sprint employee who testified regarding the records did not have the proper certification of the records, and he objected to any testimony based on inferences from those records. (R. 5:8-9). As a result, the prosecution had no direct evidence in the record that Petitioner's cell phone had been used in Dallas. Counsel was not ineffective in this regard.

As for Petitioner's claim that counsel was ineffective for failing to interview one of the witnesses, the record reflects that defense counsel did subpoena her to testify at trial, as did the State. (R. 4:5, 11). Because she only spoke Portugese, any communication with her occurred through her daughter or through the interpreter hired to translate her testimony at trial. (R. 4:11, 14-15). When

the witness presented for the trial, she refused to speak to counsel. (R. 4:7-9, 76-77).  Petitioner

argues that she may have agreed to do so had counsel procured his own translator, but he presents

no support for this claim.  (Reply at 21-22).  Counsel cross-examined her extensively about her

statement to the police.  She confirmed that it was an accurate statement, and that it stated that she

heard a female's voice arguing with the victim shortly before she heard the gunshot. (R. 3:182-84;

R. 4:18-28, 32-34).  Counsel was not ineffective in his representation with regard to this witness.

The state habeas court's denial of these claims is not contrary to federal law, and Petitioner's

fifth through eighth grounds for relief should be denied.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his ninth and tenth grounds for relief, Petitioner alleges that appellate counsel was

ineffective for failing to argue on appeal that Petitioner's Fourth Amendment rights were violated

by the presentation of evidence of his refusal to consent to a warrantless seizure, and for failing to

argue that false evidence was presented at trial.

The federal constitution guarantees a criminal defendant the effective assistance of counsel

on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been

ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466

U.S. 668 (1984).  Under *Strickland*, Petitioner must show a reasonable probability that but for his

counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274

F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every

non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

"Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of

reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).   To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

Petitioner has failed to establish either that his appellate counsel was deficient or that the alleged deficiency prejudiced him on appeal.  First, he has failed to establish that counsel was ineffective for failing to argue that his Fourth Amendment rights were violated by the presentation of testimony that he refused to agree to a warrantless seizure.  As Petitioner concedes, trial counsel did not preserve this issue for review on this basis.  Counsel was also not ineffective for failing to argue on appeal that the prosecution presented false testimony at trial.  As discussed earlier, there is no evidence that the cell phone records that were excluded were in fact false.  *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).  The state court's denial of these grounds is not contrary to federal law.  Petitioner's ninth and tenth grounds for relief lack merit and should be denied.

## VII.  DUE PROCESS

Petitioner asserts in his eleventh ground that his due process rights were violated because the police did not properly investigate the crime scene.  He contends that they did not collect certain evidence at the crime scene, including a bloody towel, cigarette butts, a chair, and a machete found under the radiator, and that they failed to sweep or vacuum the floor of the apartment for biological

or forensic evidence.  (Pet. at 12, Reply at 28-30).  Petitioner claims that if this evidence had been collected, it would have exculpated him and identified a suspect. (Reply at 29).

Absent a showing of bad faith on the part of the police, a failure to preserve potentially useful evidence does not result in a denial of due process of law.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Petitioner acknowledges that he is not claiming bad faith.  He only contends that had certain  evidence been collected, it would have exculpated him and inculpated an unnamed suspect who used a gun owned by Petitioner and his wife to kill the victim.  (Reply at 29).  Petitioner has failed to allege that his constitutional rights were violated by the failure to collect certain evidence at the crime scene.  Therefore, the state court's denial of this claim is not contrary to federal law, and his eleventh ground for relief should be denied.

## VIII.  SUFFICIENCY OF THE EVIDENCE

In his twelfth ground for relief, Petitioner asserts that there was no evidence presented at trial that he was near the crime scene at the time of the crime, especially since records of which cell towers handled his calls on the evening of the murder were not admitted into trial.

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence.  *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence").  Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson,* the United States Supreme Court held that the correct standard of review when a state prisoner challenges the

sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320.  Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

At trial, the State presented evidence that: (1) the gun owned by Petitioner and his wife was the weapon used to kill the victim; (2) Petitioner knew where the victim lived and had confronted him and Petitioner's wife at the victim's apartment over their affair approximately two months earlier; (3) Petitioner's wife was at home in Fort Worth talking on the phone with a friend when the victim was killed in Dallas; (4) Petitioner had called this friend when his wife was arrested to ask for her phone records because they would reflect that Petitioner's wife was at home at the time of the murder; (5) Petitioner had worn a baseball cap and jeans when he confronted the victim two months earlier, and a similarly-dressed man was seen in the yard of the victim's apartment about one and a half hours before the murder; (6) the interior of Petitioner's gun had been tampered with in an apparent effort to prevent forensic analysis sometime after the murder, and Petitioner told the investigating police officer that he "watched a lot of CSI"; and (7) a blood stain from a human male was found on the floorboard in the backseat of Petitioner's car that did not match his DNA profile, and the victim could not be excluded as the possible contributor of the DNA. (R. 3:99-100, 110, 112; R. 4:34-7, 41-6, 62-3, 96-100; R. 5:44-7, 54-75, 126-28).

Viewed in the light most favorable to the verdict, the evidence presented at trial is sufficient to establish that any rational jury could have found Petitioner guilty beyond a reasonable doubt.  As for Petitioner's assertion that there was no evidence that he was in Dallas County at the time of the

murder, and that there was evidence a witness heard a woman's voice arguing with the victim before the shooting, the jury was the fact-finder responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). After identifying the *Jackson* standard, the state appellate court denied this ground on direct appeal, and this denial was affirmed with the denial of Petitioner's PDR. This denial is not an unreasonable application of federal law, and Petitioner's twelfth ground for relief should be denied.

## IX. CUMULATIVE ERROR

In his thirteenth ground for relief, Petitioner asserts that cumulative constitutional errors infected his trial. In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), the Fifth Circuit held that to prevail on a claim of cumulative error, a federal habeas petitioner must establish that: 1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the constitutional errors so infected the entire trial that the resulting conviction violates due process. *Id.* at 1458.

Petitioner has not shown constitutional errors that infected his trial such that his due process rights were violated. The state court's denial of this ground was not contrary to federal law, and Petitioner's thirteenth ground for relief should be denied.

## X. ACTUAL INNOCENCE

Finally, in his fourteenth ground, Petitioner contends that he is an innocent person convicted through the use of multiple constitutional violations and based on weak, circumstantial evidence. This Court has determined that Petitioner has presented no colorable claim that his constitutional rights were violated. Both the Supreme Court and the Fifth Circuit have held that a stand-alone

claim of actual innocence is not a ground for habeas relief.  *See Herrera v. Collins*, 506 U.S. 390,

400 (1993);  *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).  Furthermore, in *Herrera*, the

Supreme Court stated that, even if a "truly persuasive" showing of actual innocence would warrant

federal habeas relief, the threshold for such a claim would be "extraordinarily high." *Id.* at 417.

Given the amount of evidence presented at trial supporting Petitioner's conviction, he has not made

a truly persuasive showing of his actual innocence.  His fourteenth ground should be denied.

## XI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected

in the state-court records, an evidentiary hearing appears unnecessary.

## XII.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with

prejudice.

SIGNED on this 4th day of April, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE